IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEROGIA
MACON DIVISION

| | |
|---|---|
| HAROLD WILKES, | ) |
|     Plaintiff, | ) |
| v. | ) CIVIL ACTION NUMBER: |
| DEFENSE LAWYERS, P.A., and<br>LEE ANDREW STEIN, | ) |
|     Defendants. | ) |

**COMPLAINT FOR DAMAGES**

Plaintiff Harold Wilkes, brings this action against Defense Lawyers, P.A., and Lee Andrew Stein (collectively "Defendants") for Defendants' violation of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679; the Georgia Debt Adjustment Act, OCGA § 18-5-1 *et seq*. ("GDAA"), and the Georgia Fair Business Practices Act, OCGA § 10-1-390 *et seq*. ("GFBPA").

**PARTIES, JURISDICTION AND VENUE**

1.

The Court has jurisdiction pursuant to 15 U.S.C. § 1679g; 28 U.S.C. § 1331, § 1337 and § 1367.

2.

Plaintiff is a natural person who is domiciled in the State of Georgia and in Peach County.

3.

Defendant Defense Lawyers, P.A. is a Florida for-profit corporation with its principal place of business at 101 Plaza Real South, Suite 204, Boca Raton, Florida 33432.

4.

Defendant Defense Lawyers, P.A. maintains its registered office at the same address and has named Lee Andrew Stein, Esq. as its registered agent. Service of process may be perfected on Defense Lawyers, P.A. by serving Lee Stein at this address.

5.

Defendant Defense Lawyers, P.A. has not registered with the Georgia Secretary of State and is not authorized to transact business in Georgia.

6.

Defendant Defense Lawyers, P.A. is subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, OCGA § 9-10-91, as Defendant Defense Lawyers, P.A. transacts business within the state, has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside this state.

7.

Defendant Defense Lawyers, P.A. regularly does and solicits business, and engages in any other persistent courses of conduct, and derives substantial revenue from services rendered in this state.

8.

Defendant Lee Andrew Stein is a Florida-licensed attorney and maintains his principal place of business at 101 Plaza Real South, Suite 204, Boca Raton, Florida 33432, where service of process may be perfected upon Defendant Stein.

9.

Defendant Lee Andrew Stein has not registered with the Georgia Secretary of State and is not authorized to transact business in Georgia.

10.

Defendant Lee Andrew Stein is not admitted to the State Bar of Georgia and has not applied for *pro has vice* admission to practice law in Georgia.

11.

Defendant Lee Andrew Stein is subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, OCGA § 9-10-91, as Defendant Lee Andrew Stein transacts business within the state, has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside this state.

12.

Defendant Lee Andrew Stein regularly does and solicits business, and engages in any other persistent courses of conduct, and derives substantial revenue from services rendered in this state.

13.

None of the Defendants have complied with the registration requirements of OCGA § 18-5-3.1 and are not authorized to offer debt adjustment services in this state, but have nevertheless engaged within this state in said debt adjustment services.

14.

The events giving rise to this Complaint occurred in Plaintiff's resident county of Peach, and thus venue is proper in this Court pursuant to the venue provisions of the Georgia Long Arm Statute, OCGA § 9-10-93.

**<u>RELEVANT FACTS</u>**

15.

Defendants represented that they could settle Plaintiff's debts for a fraction of what was owed but failed to do so and instead lined their pockets with Plaintiff's money rather than assisting him.

16.

Defendants' self-described activities, if successful, necessarily result in credit repair, since a settled debt would reduce the consumer's debt-to-credit ratio (utilization), increase the consumer's credit score, and would appear on a credit report as paid, partly paid, or settled.

17.

Defendants' program was not a bona fide credit counseling service.

18.

Plaintiff's estimated debt was $50,935.00 on eight outstanding accounts.

19.

Defendants' estimated fees were $16,346.40, ($12,746.40 attorney retainer + $3,600.00 processing fees).

20.

Plaintiff was expected to and did, start making payments to the Defendants before any services were rendered.

21.

Plaintiff made monthly payments of $526.90 starting on April 3, 2020 and ending on November 3, 2020.

22.

Defendants conditioned its agreement to provide services on Plaintiff agreeing in advance to make payment by means of preauthorized "electronic fund transfers" from his account with a financial institution as such terms are defined in the Electronic Funds Transfer Act, 15 U.S.C. § 1693k.

23.

In early November 2020, at which time Plaintiff had paid $4,215.20, he demanded a refund from Defendants and only received $1,237.30 in return.

24.

Despite their promises, Defendants did not resolve, or attempt to resolve, any of the past due accounts of Plaintiff as specifically identified by Plaintiff to the Defendants on a creditor list ("Creditor List") which formed part of the understanding Plaintiff had with the Defendants as to the services that were to immediately begin to be rendered.

### **THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. § 1679**

25.

The Credit Repair Organizations Act ("CROA") states as its purpose:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and
>
> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679 (b).

26.

Plaintiff is a consumer within the definition of CROA. 15 U.S.C. § 1679a (1).

27.

Each of the Defendants is a "credit repair organization" within the definition of CROA, as each Defendant is:

> [a] person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—

> (i) improving any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)[.]

15 U.S.C. § 1679a (3) (A).

28.

As stated previously, Defendants' self-described activities, if successful, would necessarily result in credit repair, since a settled debt would reduce the consumer's debt-to-credit ratio (utilization), increase the consumer's credit score, and would appear on a credit report as paid, partly paid, or settled.

29.

Under CROA, "No person may . . . make or use any untrue or misleading representation of the services of the credit repair organization." 15 U.S.C. § 1679b (a) (3).

30.

CROA states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b (b).

31.

CROA also states: "(a) Consumer waivers invalid. Any waiver by any consumer of any protection provided by or any right of the consumer under this title [15 USCS §§ 1679 et seq.]—(1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f

32.

Thus, Defendants' attempt to require a waiver of Plaintiff's right to a trial by jury before a court of law is void.

33.

Defendants repeatedly made untrue and misleading representations to Plaintiff in violation of CROA by informing Plaintiff that Defendants would settle his debts with his creditors, but instead Defendants intended to and did line their pockets with Plaintiff's money while doing little or nothing to truly assist Plaintiff or improve his credit.

34.

Further, Defendants violated CROA by paying themselves $4,215.20 in fees by September, 2019, leaving only a mere $1,237.30 of Plaintiff's money to settle any debts.

35.

CROA states that

> Any person who fails to comply with any provision of this title [15 U.S.C. §§ 1679 *et seq*.] with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:
>
> (1) Actual damages. The greater of—
>
>> (A) the amount of any actual damage sustained by such person as a result of such failure; or
>>
>> (B) any amount paid by the person to the credit repair organization.
>
> (2) Punitive damages.
>
>> (A) Individual actions. In the case of any action by an individual, such additional amount as the court may allow.

15 U.S.C. § 1679g (a).

36.

Plaintiff has suffered actual damages under CROA as a result of the Defendants' actions.

37.

Plaintiff is entitled to recover his actual damages as well as punitive damages from Defendants under CROA.

**THE GEORGIA DEBT ADJUSTMENT ACT ("GDAA")**

38.

Georgia Debt Adjustment Act ("GDAA") defines Debt Adjusting as "doing business in debt adjustments, budget counseling, debt management, or debt pooling service or holding oneself out, by words of similar import, as providing services to debtors in the management of their debts and contracting with a debtor for a fee to:

(A) Effect the adjustment, compromise, or discharge of any account, note, or other indebtedness of the debtor; or

(B) Receive from the debtor and disburse to his or her creditors any money or other thing of value…"

OCGA § 18-5-1.

39.

From its initial creation by the Georgia General Assembly in 1956 until its amendment of July 1, 2003, the GDAA stated that "[i]t shall be unlawful for any person to engage in the business of debt adjusting" and that "**[a]ny person who engages in the business of debt adjusting . . . shall be guilty of a misdemeanor.**" OCGA § 18-5-2 (1956) (emphasis added).

40.

Thus, the original GDAA undeniably closed and locked the door for persons to lawfully offer debt adjusting for a fee in this state, unless incidental to the practice of law.

41.

In 2003, the General Assembly amended the GDAA. In the amendment's enabling clause, the legislature stated that the purpose is:

> To limit the maximum charge that may be imposed for the provision of debt adjustment services; to provide for definitions; to provide for exemptions from those provisions related to debt adjustment; to require persons engaged in debt adjusting to obtain an annual audit of all accounts and to maintain a certain amount and type of insurance coverage; to provide for the disbursement of a debtor's funds within 30 days of receipt; to require persons engaged in debt adjusting to maintain trust accounts for debtors' funds; to provide for civil and criminal violations and penalties; to provide for investigation and enforcement; to provide for related matters; to provide for an effective date; to repeal conflicting laws; and for other purposes.

2003 Ga. Laws No. 103 p. 392 (House Bill No. 385).

42.

While the amended GDAA removed the complete prohibition on debt adjusting for a fee, it provided a very narrow framework of compliance for debt adjusters to operate in Georgia and be in compliance with the Act's mandates.

43.

Specifically, the Georgia General Assembly allows debt adjusting as long as it meets the consumer protection criteria set forth in the GDAA. The GDAA permits debt adjusters to receive funds from a debtor and then in turn distribute payment to the debtor's individual creditors in accordance with a pre-determined agreement with each creditor. The GDAA also caps a debt adjuster's fees.

44.

The amended GDAA commands that the debt adjuster "*shall* maintain a separate trust account for the receipt of any and all funds from debtors and the disbursement of such funds on

behalf of debtors[;]" OCGA § 18-5-3.2 (b) (emphasis added), "*shall* disburse to the appropriate creditors all funds received from the debtor, less any fees authorized by [the Act], within thirty days of receipt[;]" OCGA § 18-5-3.2 (a) (emphasis added), "*shall* obtain annual audits from independent CPAs on all accounts in which Georgia debtors' funds have been deposited[;]" OCGA § 18-5-3.1 (a) (1) (emphasis added), "*shall* obtain a specified level of insurance coverage for employee dishonesty depositor's forgery and computer fraud[;]" OCGA § 18-5-3.1 (a) (2) (emphasis added), and "*shall* not:

> accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor . . .

OCGA § 18-5-2.

45.

The amended GDAA further provides for a civil remedy for a person's violation of the GDAA. OCGA § 18-5-4 states:

> Any person who engages in debt adjusting in violation of the provisions of [OCGA § 18-5-2 or § 18-5-3.2 (a)] shall further be liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00. Such debtor shall have the right to bring a cause of action directly against such person for violation of the provisions of this chapter.

46.

Defendants' debt adjustment services do not comply with the GDAA, and indeed, clearly and expressly violate it.

47.

The Defendants hold themselves out to be in the business of debt resolution and debt management, providing alleged services to debtors to manage their debts for a fee by promising to

adjust or compromise consumers' debts, including Plaintiffs, and Defendants receive money from consumers, including Plaintiffs, to allegedly disburse to creditors.

48.

Defendants are engaged in the business of providing "Debt Adjusting" services as that term is defined by OCGA § 18-5-1.

49.

Defendants provided Debt Adjusting services to Plaintiff while he resided in the state of Georgia.

50.

Defendants contracted for and accepted from Plaintiff a charge, fee, contribution, or combination thereof in an amount in excess of 7.5% of the amount he paid monthly for distribution of Plaintiff's creditors.

51.

Defendants' conduct violates the provisions of the GDAA, and specifically OCGA § 18-5-2.

52.

From April 2020 through November 2020, Defendants received from Plaintiff money for the payment of his creditors which Defendants retained for more than thirty (30) days.

53.

The Defendants violated OCGA § 18-5-3.2 (a) by holding money Plaintiff paid for distribution to creditors for more than thirty (30) days.

54.

The Defendants do not obtain annual audits from independent CPAs on all accounts which Georgia debtors' funds have been deposited pursuant to OCGA § 18-5-3.1 (a) (1).

55.

The Defendants do not obtain sufficient insurance coverage for employee dishonesty, depositor's forgery and computer fraud pursuant to OCGA § 18-5-3.1 (a) (2).

56.

Due to said violations of the GDAA, pursuant to OCGA § 18-5-4 (b) (2), the Defendants are liable to Plaintiff in an amount equal to the total of all fees, charges, and/or contributions paid by Plaintiff to the Defendants, plus statutory damages in the amount of $5,000.00.

**THE GEORGIA FAIR BUSINESS PRACTICES ACT ("GFBPA")**

57.

The Defendants engaged in unfair acts and practices in the conduct of consumer transactions in trade or commerce, including without limitation, each of the specific enumerated Georgia Debt Adjustment Act violations, *supra*, which constitute *per se* violations of the Georgia Fair Business Practices Act, OCGA § 10-1-390 *et seq. See* OCGA § 18-5-2 (d).

58.

Defendants' violations of the Georgia Fair Business Practices act were patently intentional.

59.

The conduct of the Defendants is the direct and proximate cause, as well as a substantial factor, in bringing about the injuries, actual damages and harms to the Plaintiff.

60.

None of the Defendants maintain a place of business or keep assets within the State of Georgia; accordingly, a prior written demand for relief shall not apply for these Defendants. OCGA § 10-1-399 (b).

61.

Defendants are liable to Plaintiff for the full amount of his actual damages, including all fees, charges, and contributions paid by the Plaintiff as well as general damages for emotional distress and hiring outside Georgia counsel to defend potential lawsuits caused by Defendants' advice, all of which should be trebled, exemplary damages, and calculated along with their attorney fees and costs of litigation for maintain this action. *See* OCGA § 10-1-399 (a) & (c).

## **CONVERSION**

62.

The aforesaid actions of the Defendants constitute conversion.

63.

Plaintiff had a consumer account with one or more of the Defendants or their agents.

64.

Plaintiff has paid $4,215.20 into his account with one or more of the Defendants or their agents some or all of which was to be held for his benefit.

65.

The Defendants appropriated Plaintiff's money and deposited into their own account and where Plaintiff had no access to the funds, to the exclusion of his rights.

66.

Only $1,237.30 of the money has been returned to the Plaintiff, and Plaintiff no longer has access to the rest of his money.

67.

The aforesaid actions of the Defendants constitute conversion.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests the following:

a) That process issue and that the Defendants be served with Summons and a copy of this Complaint;

b) That Plaintiff be awarded a judgment against Defendants for their multiple violations of the various consumer protection laws outlined herein;

c) That Plaintiff be awarded damages for Defendants' violations of GDAA and GFBPA, based on the facts alleged or provided in discovery; including statutory, compensatory, and punitive damages pursuant to OCGA § 18-5-4 (b)(2) and OCGA § 10-1-399 (a) and (c);

d) That this Court award the Plaintiff costs of suit and reasonable attorneys' fees and costs pursuant to OCGA § 10-1-399 (d);

e) That this Court award the Plaintiff damages for Defendants' acts of conversion of Plaintiff's money;

f) That Plaintiff have a trial by jury; and

g) That this Court award such other and further relief as law or equity may provide.

Respectfully submitted, this 16th day of March, 2021.

**HURT STOLZ, P.C.**

/s/ James W. Hurt, Jr.
By: James W. Hurt, Jr.
Georgia Bar No.: 380104

1551 Jennings Mill Road
Suite 3100-B
Watkinsville, Georgia 30677
(706) 395-2750

Facsimile: 706-996-2576
jhurt@hurtstolz.com

                                               **CLIFF CARLSON LAW, P.C.**

                                               /s/ Clifford Carlson
                                               By: Clifford Carlson
                                               Georgia Bar No.: 227503

1114 Highway 96 Suite C1-347
Kathleen, GA 31047
(478) 254-1018
cc@cliffcarlsonlaw.com                   **ATTORNEYS FOR PLAINTIFF**